60 N.J. Super. 582 (1960)
160 A.2d 60
WILLIAM GOETSCH, MARY PILART AND PAUL DIAMOND, PLAINTIFFS,
v.
HAROLD W. PHILHOWER, TOWN CLERK OF IRVINGTON, NEW JERSEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 4, 1960.
Decided April 5, 1960.
Opinion April 8, 1960.
*583 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Martin Kesselhaut argued the cause for appellants.
Mr. George S. Hochberg, attorney for respondents, appeared at the request of the court, but did not argue.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This is an appeal from a Law Division judgment, entered March 22, 1960, holding void the petition nominating defendant Huhn for Democratic county committeeman in the 1st ward, 16th district, Irvington, N.J., and directing that his name not be placed on the sample ballot or official ballot for the primary election to take place April 19, 1960. We scheduled oral argument as an emergency in view of the necessity of mailing out the sample ballots. Counsel for plaintiffs appeared at the special request of the court to stipulate such background facts as might be pertinent, but he did not argue. Following argument and further study of the case we reversed the judgment and announced an early filing of our opinion.
The petition Huhn filed with defendant town clerk contained ten signatures, the number required by N.J.S.A. 19:23-8. Plaintiffs timely challenged the petition (R.S. 19:13-10) for the reason that two of the signers had not *584 voted at the general election held in November 1959. The town clerk proceeded to pass upon the validity of this objection, N.J.S.A. 19:13-11, and accepted the petition. Plaintiffs then instituted an action in the Superior Court, Law Division, seeking a reversal of the town clerk's determination. We are informed that the trial judge reached the result he did for the single reason that the challenged signers did not vote at the November 1959 general election. The town clerk and Huhn appeal the resultant judgment.
The applicable statute is N.J.S.A. 19:23-7 which, in pertinent part, states:
"Each such petition shall set forth that the signers thereof are qualified voters of the State, congressional district, county, municipality, ward or election district, as the case may be, in which they reside and for which they desire to nominate candidates; that they are members of a political party (naming the same), and that at the last general election preceding the execution of the petition they voted for a majority of the candidates of such political party, and that they intend to affiliate with that political party at the ensuing election; that they indorse the person or persons named in their petition as candidate or candidates for nomination for the office or offices therein named, and that they request that the name of the person or persons therein mentioned be printed upon the official primary ballots of their political party as the candidate or candidates for such nomination. The petition shall further state the residence and post-office address of each person so indorsed, and shall certify that the person or persons so indorsed is or are legally qualified under the laws of this State to be nominated, and is or are a member or members of the political party named in the petition." (Italics ours.)
L. 1898, c. 139, a revision of the Election Act, adopted some years before the institution of primary elections in this State, provided in section 41 for nominations by petition. This section required, simply, that those signing a nominating petition be legally qualified to vote for the candidates named. After New Jersey had adopted primary elections the Legislature in 1920 passed a general revision of the Election Act, L. 1920, c. 349. Art. XII, §§ 3 to 13, dealt with direct nomination by petition. Section 5 required that the petition "be signed by legally qualified *585 voters of this State, residing within the district or political division in and for which the officer or officers nominated are to be elected," to the number designated. The Election Act was again revised in 1930 (L. 1930, c. 187); section 272 set out the requirements of a nominating petition later carried over into R.S. 19:23-7.
Although several reported cases refer to R.S. 19:23-7, as amended, none has dealt with the precise question before us, namely, whether signers of a nominating petition must have voted at the last general election. In re Zohn, 49 N.J. Super. 350 (Law Div. 1958), concerned the clause italicized above, which requires that signers state that they voted for a majority of the candidates of their political party at the last general election preceding the execution of the petition. It was there held that such a requirement, calling upon petitioners to disclose how they voted, is unconstitutional. The court concluded that the italicized clause could be deleted from N.J.S.A. 19:23-7, without in any sense destroying the intent and purpose of the rest of the section. The Zohn ruling is not here implicated, for the simple reason that the challenged signers did not vote in the November 1959 election.
The Legislature did not, in N.J.S.A. 19:23-7 or elsewhere in the Election Act, specifically address itself to the question of what would happen in case one or more signers of a primary nominating petition had failed to vote at the last general election. The statute is completely silent on the subject. It might be argued that the Legislature must impliedly have intended that before one could be a signer he had to show that he voted in the preceding November election. Were any such contention advanced we would be obliged to conclude that the requirement was invalid, trespassing upon the civil and political rights of citizens. Cf. Cottingham v. Vogt, 60 N.J. Super. 576 (App. Div. 1960), just decided.
Unlike some states, New Jersey does not permit a member of one party to "cross over" and invade the other party's *586 primary. The provisions of the Election Act relating to primaries, N.J.S.A. 19:23-1 et seq., are intended to maintain the integrity of the political party system. Stevenson v. Gilfert, 13 N.J. 496 (1953), held that the right to participate in a party primary was subject to regulation by the Legislature to prevent improper manipulation of party affairs by outsiders. However, the court stressed that such regulation must be reasonable. Compare George v. Gillespie, 40 N.J. Super. 139 (App. Div. 1956), and In re Dvorken, 12 N.J. Misc. 438, 172 A. 337 (Sup. Ct. 1934).
In assessing the validity of any legislative provision, we must determine whether there is a reasonable relation between the evil to be met or corrected, and the means taken to achieve that end. We find no reasonable relation between the requirement of N.J.S.A. 19:23-7 that a signer must have voted at the last general election, and his right to nominate a candidate for office in his party primary.
The statute as it presently stands fully insures that no signer will raid the other party. One who votes in a primary election of a political party is deemed to be a member of that party until two subsequent annual primary elections have elapsed. Not until he has skipped two primary elections may he cross over and vote in the primary of another political party, N.J.S.A. 19:23-45, and then only after signing the affidavit called for by that section. Here both sides admit there is no question whatever that the two challenged signers are Democrats and entitled to vote in a Democratic primary. N.J.S.A. 19:23-7 also requires signers to state they are members of the particular political party, and intend to affiliate with that party at the ensuing election.
A requirement that persons signing a petition must have voted in the last general election, adds nothing to the protection which the Legislature has provided in order to insure the integrity of party primaries. Since no one may invade the privacy of the voting booth, just how a voter may have cast his ballot in the general election remains his secret.
*587 As we observed in Cottingham, there are any number of reasons why a person may not have voted at the last general election: he may have been critically ill at the time, or suddenly called away to a distant point on an emergency, or unexpectedly detained on his return to this State. To take away from him his right to nominate a candidate for his party primary for any of these reasons, or indeed for the simple reason that he forgot to vote or did not care to vote, would deprive him of one of the fundamental rights possessed by every citizen.
The judgment is reversed.